IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-142

No. 506A20

Filed 5 November 2021

IN THE MATTER OF: N.K.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 2 October 2020 by Judge April C. Wood in District Court, Davie County. This matter was calendared for argument in the Supreme Court on 30 September 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Holly M. Groce for petitioner-appellee Davie County Department of Social Services.*

*Kip David Nelson for appellee Guardian ad Litem.*

*Peter Wood for respondent-appellant mother.*

BERGER, Justice.

Respondent appeals from an order terminating her parental rights[1] to N.K. (Nancy),[2] born in September 2016. Counsel for respondent filed a no-merit brief pursuant to Rule 3.1(e) of the North Carolina Rules of Appellate Procedure.

On November 2, 2016, the Davie County Department of Social Services (DSS)

---

[1] The trial court also terminated the parental rights of Nancy's father; however, he did not appeal and is not a party to this proceeding.

[2] Pseudonyms are used in this opinion to protect the juvenile's identity and for ease of reading.

filed a petition alleging that Nancy was a neglected and dependent juvenile, and DSS obtained a nonsecure custody order. The petition alleged that Nancy's older half-sibling, Carl, was assaulted by a family friend in Nancy's presence, and respondent did not intervene or stop the attack.

¶ 3        In a subsequent interview with Carl, DSS noted bruising and marks on Carl's body, including his back, face, neck, arms, side, and legs. Carl disclosed that the family friend, who often acted as a caretaker for him and Nancy, regularly hit him with a belt and that respondent had hit him on the legs with a tire iron. Respondent denied any knowledge of how Carl obtained the marks on his body, though she acknowledged the family friend often supervised him. Additional information was provided that Nancy was exposed to threats by her father, and drug use and other acts of domestic violence by respondent. Respondent, the children's father, and the family friend were arrested on charges related to the assaults on Carl.

¶ 4        Respondent entered into a case plan with DSS on November 8, 2016. The case plan required her to communicate regularly with DSS and attend, complete, and follow any necessary recommendations from a substance abuse assessment, a psychological evaluation, and separate parenting assessments. In addition, respondent was required to provide proof of employment and income, proof of current residence and stability in maintaining that residence, proof of a job search if she became unemployed, and proof of reliable transportation.

¶ 5 Following an adjudication hearing, the trial court entered an order on December 21, 2016, concluding that Nancy was a neglected juvenile. In an accompanying disposition order, the trial court ordered respondent to comply with her case plan by completing a psychological evaluation, completing a parenting assessment, completing a substance abuse assessment, and complying with any recommendations. The court also ordered that Nancy remain in DSS custody and authorized twice-weekly supervised visitation.

¶ 6 After the initial permanency-planning hearing, the trial court entered an order on March 13, 2017, establishing a primary permanent plan of reunification with a concurrent plan of guardianship with a court-approved caretaker. In light of respondent's lack of progress with the requirements of her case plan and an increase in substance abuse and domestic violence, the trial court changed the primary permanent plan to adoption with a secondary plan of reunification. Nancy was moved to a potential adoptive placement following that permanency-planning hearing.

¶ 7 Due to respondent's continued failure to make "any significant progress" toward her case plan requirements, the trial court changed the secondary plan to guardianship, and, in a January 27, 2020 permanency-planning order, relieved DSS of continued reunification efforts. The trial court also directed DSS to file a petition

to terminate respondent's parental rights.[3]

¶ 8     On April 8, 2020, DSS filed a second petition to terminate respondent's parental rights on the grounds of neglect, willfully leaving Nancy in foster care for more than twelve months without a showing of reasonable progress, and respondent having her parental rights to another child terminated.  *See* N.C.G.S. § 7B-1111(a)(1)–(2), (9) (2019).  Following a hearing , the trial court entered an order on October 2, 2020, terminating respondent's parental rights.  The trial court concluded grounds existed to terminate her parental rights based on the grounds of neglect and willful failure to make reasonable progress.[4]  The trial court made findings of respondent's continued substance abuse, positive drug screens up to the month of the termination hearing, and issues with domestic violence that resulted in her incarceration at the time of the hearing.  Further, the trial court found respondent had failed to make any progress on the requirements of her case plan.  The trial court concluded it was in Nancy's best interests that respondent's parental rights be terminated. *See* N.C.G.S. § 7B-1110(a) (2019).  Respondent appeals.

---

[3] DSS previously filed a petition to terminate respondent's parental rights on November 14, 2018, on the grounds of neglect and willfully leaving Nancy in foster care for more than twelve months without a showing of reasonable progress, *See* N.C.G.S. § 7B-1111(a)(1)–(2) (2019).  However, the trial court dismissed that petition upon concluding DSS had failed to present sufficient evidence that grounds existed to terminate respondent's parental rights.

[4] The trial court did not conclude grounds existed to respondent's parental under N.C.G.S. § 7B-1111(a)(9) because respondent appealed the termination order related to that child and the matter was pending at the Court of Appeals.

Counsel for respondent filed a no-merit brief on his client's behalf under Rule 3.1(e) of the Rules of Appellate Procedure. Counsel identified three issues that could arguably support an appeal but also explained why he believed these issues lacked merit. Counsel advised respondent of her right to file *pro se* written arguments on her own behalf and provided her with the documents necessary to do so. Respondent has not submitted written arguments to this Court.

We independently review issues identified by counsel in a no-merit brief filed pursuant to Rule 3.1(e). In re L.E.M., 372 N.C. 396, 402, 831 S.E.2d 341, 345 (2019). After considering the entire record and reviewing the issues identified in the no-merit brief, we conclude that the order terminating respondent's parental rights is supported by clear, cogent, and convincing evidence and is based on proper legal grounds. Accordingly, we affirm the order of the trial court.

AFFIRMED.